**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
JULIA JOHNSON,

                        *Pro se* Plaintiff,

              -against-

TARGET CORPORATION, FIRST ADVANTAGE,
NYS COURT ADMINISTRATIONS, and TJX
CORPORATIONS,

                    Defendants.
-------------------------------------------------------------X

                           **REPORT AND**
                       **RECOMMENDATION**

                   CV 17-7535 (JS) (AKT)

**A. KATHLEEN TOMLINSON, U.S. Magistrate Judge:**

**I.**     **PRELIMINARY STATEMENT**

      *Pro se* Plaintiff Julia Johnson ("Plaintiff") commenced this action against Defendants

Target Corporation ("Target"), First Advantage Background Services Corporation ("First

Advantage"), the New York State Office of Court Administration ("the OCA"), and

HomeGoods[1] (collectively, "Defendants"), asserting claims under the Fair Credit Reporting Act,

15 U.S.C. § 1681, *et seq*. ("FCRA") and claims for hostile work environment and retaliation.

*See generally* Plaintiff's Complaint ("Compl.") [DE 1].  Plaintiff's claims appear to arise out of

two background checks relating to her employment at HomeGoods and Target, respectively.  *See*

*id*.  Each of the four Defendants has moved to dismiss Plaintiff's Complaint.  Judge Seybert has

referred all four motions to this Court for a Report and Recommendation as to whether the

motions should be granted.  *See* Electronic Order dated October 11, 2018.  For the reasons set

---

    [1]   Defendant HomeGoods states that it was incorrectly named "TJX Corporations, TJX
Corporation, and TJX Retailers" in Plaintiff's Complaint.  HomeGoods' Notice of Motion to
Dismiss [DE 35].

forth below, this Court respectfully recommends to Judge Seybert that each of the four motions to dismiss be GRANTED and Plaintiff's Complaint be DISMISSED.

## II.    BACKGROUND

### A.    The Allegations in Plaintiff's Complaint

The Court takes the following allegations from Plaintiff's Complaint and accepts them as true for purposes of Defendants' motions to dismiss.  *See Aegis Ins. Servs., Inc. v. 7 World Trade Co., L.P.*, 737 F.3d 166, 176 (2d Cir. 2013).  However, the Court does not credit conclusory statements, legal conclusions, or unwarranted deductions.  *See Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014) (explaining that when analyzing the sufficiency of a complaint, "mere conclusions of law or unwarranted deductions need not be accepted").

Plaintiff utilized the Eastern District's form *pro se* complaint.  All of her allegations are contained in a statement attached to the Complaint, the entirety of which reads as follows:

> I am filing this complaint pursuant to 15 U.S. code 1681, Fed. Rule 23 Independent Action. I applied for employment at Target Corporation on April 21, 2016, and was already employed by TJX Retailers (Home Goods), as of December 11, 2014. Both companies required background checks, which were conducted by First Advantage Consumer Center, located in Atlanta Georgia. Both retailers violated the Fair Credit Report Act which was enacted to promote the accuracy, fairness, privacy of the consumer information contained in files of consumer reporting agencies. This U.S. code was intended to protect consumers from the willful and/or negligent inclusion of inaccurate information in any credit report. This was not the case when Target and First Advantage received and disseminated my information (Freckleton and Just v. Target Corp., No. 14-cv-00807-GLR, D. Md. which was settled). A review of the attached letters and documents to Federal Judge Joanna Seybert, dated October 17, 2017 and November 9, 2017, will show that even my current address was incorrectly recorded. In 2014, a background report was retrieved by First Advantage Consumer Center on behalf of TJX Corporation. One of the agencies that First Advantage used to obtain information as the NYS Office of Court Administration.

The reports are rife with inaccuracies, even my previous address (943 Wallace Avenue, Baldwin , NY 11510) was not recorded.

On December 8, 2017, A Final Approval Order was issued by Hon. George L. Russell, III, United States District Court, Maryland (Freckleton and Just v. Target Corp., No. 14-cv-00807-GLR, D. Md.). While the class action lawsuit involves applications, who were denied employment I was nevertheless involved and part of the class action. I am working at Target, but have been subjected to a hostile work environment. All incidents had been documented and reported to Target's Integrity hotline (9/11/1017, ref. TGT-17-09-0313 9/14/17 Access Key # 835514555201, 11/06/17 Access Key # 565390288501, and 12/11/17, Access Key # 5118980313017.) All of these documented complaints involve Target's Team members and team leaders, even Target's executive team leaders. I believe strongly that these incidents are a result on my inquiries regarding my rights in the class action law suit.

While I was hired by TJX Corporation in 2014, and remained there until May 2017, I was forced to resign due to constant harassment and an extraordinarily hostile work environment as well.

This court has jurisdiction because my place of employment and residence are both in the Eastern district.

I am seeking considerable monetary compensation and corrections to the consumer reports issued by First Advantage. It is very important to note that I requested copies of my background check. Supposedly these were mailed to me, but since First Advantage did not have my correct address. I never received then. Therefore, material with my date of birth and Social Security Number, is somewhere out there, no one knows where!!!

I am very perturbed that I am having to deal with this situated a second time.

Compl. at 10.

Plaintiff has attached 48 pages of additional documents to her Complaint. These materials include (1) documents regarding a class action lawsuit in which Plaintiff appears to have been a class member, *see* Compl. at 12-20, 24; (2) correspondence filed by Plaintiff directed to Judge Seybert dated October 27, 2017 and November 8, 2017, which references a

lawsuit in this district with Civil Action number 10-1964,[2] *see id*. at 21-22, 43-44; (3) documents pertaining to Plaintiff's background checks, *see id*. at 25-42, 52-53, 57; (4) correspondence to and from counsel in the class action lawsuit, *see id*. at 45-49; and (5) correspondence to and from the office of New York State Assemblyman Edward P. Ra.  *See id*. at 50, 54-56, 59.

      **B.**      **Allegations in Plaintiff's Motion Papers**

      Plaintiff filed a single opposition to all four motions to dismiss.  That opposition contains additional factual allegations not found in Plaintiff's Complaint.  Later in this Report and Recommendation, the Court addresses the propriety of considering these allegations.  Here, the Court simply summarizes the assertions.

      First, Plaintiff's opposition purports to reference portions of the judicial order approving settlement of the class action lawsuit in which she was a class member.  *See* Plaintiff's Opposition to Defendants' Motions to Dismiss ("Pl.'s Opp'n") [DE 49] at 5.  Next, Plaintiff alleges that First Advantage prepared two employment background checks on her, one in 2014 in connection with her application for employment at HomeGoods and one in 2016 in connection with her application for employment with Target.  *Id*. at 6.  With respect to the first background check, Plaintiff states that the "New York State Office of Court Administrations [*sic*] furnished information in the report which contained inaccurate and obsolete information.  The inaccurate information in the report regarding the Plaintiff consists of 'aliases' and 'addresses['] that do not belong to Plaintiff, but rather data which is actually created and maintained in local law enforcement 'Online Booking Systems' (OLBS) when individuals are arrested."  *Id*.  With respect to the second background check, Plaintiff states that the report "(1) 'omitted' the address

---

      [2]  Civil Action No. 10-1964, *Johnson v. Myers et al.*, was an action filed in this Court and assigned to District Judge Seybert and the undersigned.  That case settled and was closed in 2017.

(Plaintiff) provided to Target when (Plaintiff) applied for employment, (2) (the Defendant) (s) [*sic*] inaccurately entered and recorded a different address for Plaintiff in the report, and (3) the (Defendant) (s) [*sic*] deliberately 'excluded' from the background report a previous address that is well known in the New York State Office of Court Administration, and the New York Attorney General's Office." *Id*. She states that this address is the only address on file with HomeGoods and is the address on file in this Court in connection with "two (2) civil actions that were pending (10-cv-1964-EDNY (JS) (AKT),[ ] (14-2554 U.S. Court of Appeals 2nd Cir. 2016)." *Id*. Plaintiff's opposition goes on to assert that "Target, First Advantage, Homegoods, [*sic*] and the NYS Office of Court Administration all violated the Plaintiff's consumer protection right(s), [*sic*] when Defendant(s) created and published to a 'third party' a Report that consisted of false and inaccurate information and 'omitted' some information in Plaintiff's Background report." *Id*. at 6.

Plaintiff's opposition makes further allegations of a hostile work environment:

> It should be noted that Plaintiff was subjected to a hostile work environment (for example changing Plaintiff's schedule with no notice then blaming her for not reporting to work,) and retaliatory actions, such as assigning her to work alone in what is a militiaperson assignment, Guest Services. This was a result of her pursuit of the settled class action, and this civil action. It should be noted that many of these issues were acknowledged and appropriately handled.

Pl.'s Opp'n. at 7.

### C.    Relevant Procedural Background

Plaintiff filed her Complaint in this action on or about December 27, 2017. *See generally* DE 1. On January 19, 2018, First Advantage filed a letter request for a pre-motion conference for purposes of moving to dismiss the Complaint. *See* DE 16. On February 2, 2018, the OCA filed its letter request for a pre-motion conference for purposes of moving to dismiss the

5

Complaint.  *See* DE 20.  HomeGoods followed suit on April 16, 2018.  *See* DE 26.  Target filed

its letter request for a pre-motion conference to move to dismiss on April 17, 2018.  *See* DE 30.

On April 19, 2018, Plaintiff filed a motion seeking to have *pro bono* counsel appointed to

represent her, which Judge Seybert denied on May 8, 2018.  *See* DE 32, 34.  Judge Seybert

denied the requests for a pre-motion conference on May 9, 2018 and instead set a briefing

schedule for Defendants' respective motions.  *See* Electronic Order dated May 9, 2018.

Defendants' motions to dismiss were filed between June 11 and June 13, 2018, *see* DE 35, 37,

38, 42; Plaintiff's opposition was filed on July 11, 2018, *see* DE 49; and Defendants filed their

replies between July 19 and July 25, 2018.  *See* DE 51-54.  Judge Seybert referred Defendants'

motions to this Court on October 11, 2018.  *See* Electronic Order dated October 11, 2018.  On

the same day, Plaintiff filed correspondence directed to Judge Seybert "to inform the court that

the police harassment and the retaliation at the Target Westbury Store #1139, where I am

employed, has not stopped."  DE 59.

## III.    DEFENDANTS' MOTIONS TO DISMISS

Before beginning its analysis, the Court briefly addresses each of the Defendants'

motions to dismiss and the grounds on which each motion is made.

### A.    Target's Motion to Dismiss

Target's motion argues that Plaintiff is unable to sustain a claim against it under the

FCRA for purported inaccurate information in her background check.  Target argues that the

FCRA creates liability for "consumer reporting agenc[ies]" where such agencies fail to "follow

reasonable procedures to assure maximum possible accuracy of information concerning the

individuals about whom [a] report relates."  Target's Memorandum in Support of its Motion to

Dismiss ("Target's Mem.") [DE 39] at 3-4 (quoting 15 U.S.C. § 1681e(b)).  Because "Target is

6

not a consumer reporting agency," the argument goes, no liability can lie against Target for inaccuracies in Plaintiff's background checks. *Id*. Target also contends that to the extent Plaintiff challenges the consent and disclosure form she signed authorizing Target to perform its pre-employment background check, such an attack fails because Target's form is legally sufficient. *Id*. at 4-5. Target also challenges Plaintiff's hostile work environment claim. *Id*. at 4. Lastly, Target maintains that Plaintiff has not established standing to bring these claims because she fails to plead an injury-in-fact. *Id*. at 6.

**B.      First Advantage's Motion to Dismiss**

First Advantage argues that Plaintiff has failed to plead a claim against it under the FCRA for inaccuracies in her credit report. Such a claim requires a litigant to plead (1) the existence of inaccurate information in a consumer report, (2) that the inaccuracy was due to a credit agency's failure to follow reasonable procedures designed to assure accuracy, (3) that the litigant suffered an injury, and (4) that the injury was caused by the inclusion of the inaccurate information. First Advantages Memorandum in Support of its Motion to Dismiss ("First Advantage's Mem.") [DE 37-1] at 5. First Advantage contends that Plaintiff fails to plead any of these elements and does not even plead the existence of inaccurate information. The only allegation is that certain information was *omitted*. *Id*. at 6-7. Such an omission only constitutes an inaccuracy actionable under the FCRA when it "create[s] a materially misleading impression," which, First Advantage maintains is not created by the omission of an outdated address. *Id*. at 7 (quoting *Seamans v. Temple Univ.*, 744 F.3d 853, 865 (3d Cir. 2014)). Indeed, the fact that Plaintiff was hired by both HomeGoods and Target precludes her from pleading as much according to First Advantage. First Advantage's Mem. at 8. First Advantage further argues that based on a recent case in the Southern District of New York, *William-Steele v. Trans*

7

*Union*, No. 12-CV-310, 2015 WL 576714, at *5-6 (S.D.N.Y. Feb. 10, 2015), this Court should find that an individual's address information in a background check is not the type of information upon which an actionable claim under the FCRA can be based since it does not relate to an individual's credit worthiness, credit standing, character, or employment eligibility. First Advantage's Mem. at 8-9. Finally, First Advantage also asserts that Plaintiff has failed to plead an actual injury and consequently has not established standing to bring this action. *Id*. at 13-14.

### C.    The OCA's Motion to Dismiss

The OCA raises a single argument in its motion: a state cannot be liable under the FCRA because Congress did not intend and had no authority to abrogate a state's Eleventh Amendment immunity in enacting the FCRA. *See* OCA's Memorandum in Support of its Motion to Dismiss ("OCA's Mem.") [DE 41-2] at 1-3. Accordingly, the OCA argues, as an arm of the state, it cannot be liable to Plaintiff under the FCRA. *Id.*

### D.    HomeGoods' Motion to Dismiss

HomeGoods' motion raises arguments similar to those in the motions of the other three Defendants. HomeGoods claims that Plaintiff lacks standing to pursue a claim under the FCRA because she fails to allege any injury. *See* HomeGoods' Memorandum in Support of its Motion to Dismiss ("HomeGoods' Mem.") [DE 36] at 8-9. HomeGoods also contends that Plaintiff's argument that her "previous address (943 Wallace Avenue, Baldwin, NY 11510) was not recorded" in her 2014 background check, Compl. at 10, is objectively false, since the report does list one of Plaintiff's previous addresses the 943 Wallace Avenue address. HomeGoods' Mem. at 6. Like Target, HomeGoods also argues that it is not a consumer reporting agency and therefore cannot be liable under the FCRA for any inaccuracy claims. *Id.* To the extent Plaintiff

is challenging the sufficiency of HomeGoods' disclosure form under the FCRA, HomeGoods maintains that such a challenge is time-barred because it must be brought within two years of the date the non-conforming disclosure form is provided.  Because Plaintiff signed HomeGoods' disclosure form in November 2014 and commenced this action on December 27, 2017, HomeGoods contends that Plaintiff's claim is not timely.  *Id*. at 7.

HomeGoods' reply memorandum[3] begins by pointing out that Plaintiff's opposition papers contain allegations which are absent from her Complaint and argues that these allegations should not be considered by the Court.  *See* HomeGoods' Memorandum in Reply ("HomeGoods' Reply.") [DE 54] at 2.  However, even considering the newly added allegations in Plaintiff's opposition memorandum – *i.e.*, that her first background check contained "aliases" and information "maintained in local law enforcement 'Online Booking Systems' (OLBS) when individuals are arrested" – HomeGoods contends that the background report created for Plaintiff's employment with HomeGoods was submitted with Plaintiff's Complaint and clearly shows these allegations to be false.  *Id*. at 3.

## IV.  STANDARD OF REVIEW

It is established law in this Circuit that *pro se* filings like Plaintiff's pleadings are to be liberally construed.  *Shin v. Queens Hosp. Ctr. in Jamaica*, No. 14-CV-7237, 2014 WL 7422664, at *3 (E.D.N.Y. Dec. 31, 2014).  "[A] *pro se* complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (quoting *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)).  The Court must therefore "read the pleadings of a *pro se* plaintiff liberally and interpret them 'to raise the

---

[3]  The Court does not address the issues raised in the other Defendants' reply memoranda since these memoranda do not raise any new arguments.

strongest arguments that they suggest.'" *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (quoting *Burgos v. Hopkins*, 14 F.3d 878, 890 (2d Cir.1994)).

     *Pro se* status, however, "does not exempt a party from compliance with relevant rules of procedural and substantive law." *Lomax v. Aegis Funding Corp*., No. 9-2321, 2010 WL 1633440, at *2 (E.D.N.Y. Apr. 19, 2010) (quoting *Iwachiw v. N.Y. City Bd. of Educ*., 194 F. Supp. 2d 194, 202 (E.D.N.Y. 2002)); *Guity v. Uniondale Union Free Sch. Dist*., No. 15-CV-5693, 2017 WL 1233846, at *3 (E.D.N.Y. Mar. 31, 2017) ("Plaintiff's status as a *pro se* litigant does not relieve her of her obligation to adhere to all applicable procedural rules."); *Triestman v. Fed. Bureau of Prisons*, 470 F.3d 471, 477 (2d Cir. 2006) ("[P]*ro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotations and citations omitted).  Likewise, "mere conclusions of law or unwarranted deductions need not be accepted." *Alston v. Sebelius*, No. 13-CV-4537, 2014 WL 4374644, at *5 (E.D.N.Y. Sept. 2, 2014).

     That being said, the general standard of review on a Rule 12(b)(6) motion to dismiss remains applicable here:  the Court must liberally construe the claims set forth in the Amended Complaint, accept all factual allegations in the Amended Complaint as true, and draw all reasonable inferences in favor of the Plaintiff.  *See Aegis Ins. Servs., Inc.*, 737 F.3d at 176; *Grullon v. City of New Haven*, 720 F.3d 133, 139 (2d Cir. 2013).  The Plaintiff must satisfy "a flexible 'plausibility standard.'" *Iqbal v. Hasty*, 490 F.3d 143, 157 (2d Cir. 2007), *rev'd on other grounds sub nom*. *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).  "[O]nce a claim has been stated adequately, it may be supported by showing any set of facts consistent with the allegations in the [Amended] [C]omplaint." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 546 (2007).  The Court, therefore, does not require "heightened fact pleading of specifics, but only enough facts to state a

claim to relief that is plausible on its face."  *Id*. at 570; *see Operating Local 649 Annuity Trust Fund v. Smith Barney Fund Mgmt. LLC*, 595 F.3d 86, 91 (2d Cir. 2010) (holding that a complaint must set forth "a plausible set of facts sufficient 'to raise a right to relief above the speculative level'") (quoting *Twombly*, 550 U.S. at 555).

In adjudicating a Rule 12(b)(6) motion, generally, the Court must limit itself to facts alleged in the operative pleading, which allegations are accepted as true; to documents attached to the operative pleading as exhibits or incorporated into the pleading by reference; to matters of which judicial notice may be taken; and to documents whose terms and effect are relied heavily upon in the operative pleading and, thus, are rendered "integral" to it.  *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152-53 (2d Cir. 2002); *see ASARCO LLC v. Goodwin*, 756 F.3d 191, 198 (2d Cir. 2014).  To the extent "matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." FED. R. CIV. P. 12(d); *see Wrap-N-Pack, Inc. v. Eisenberg*, No. 04-cv-4887, 2007 WL 952069, at *5 (E.D.N.Y. Mar. 29, 2007).  Importantly, however, "in deciding a motion to dismiss a pro se complaint, it is appropriate to consider 'materials outside the complaint to the extent that they are consistent with the allegations in the complaint,' *Alsaifullah v. Furco*, No. 12 CIV. 2907, 2013 WL 3972514, at *4 n.3 (S.D.N.Y. Aug. 2, 2013), including 'documents that a pro se litigant attaches to his opposition papers.'"  *Martinez v. Aycock-W.*, 164 F. Supp. 3d 502, 508 (S.D.N.Y. 2016) (quoting *Agu v. Rhea*, No. 09–CV–4732, 2010 WL 5186839, at *4 n.6 (E.D.N.Y. Dec. 15, 2010)).

Applying this standard, the Court finds conversion to a motion for summary judgment unnecessary here.  In its discretion, the Court may consider the documents filed as attachments to Plaintiff's Complaint, as well as the allegations contained in Plaintiff's opposition memorandum.

Consideration of allegations contained in Plaintiff's opposition, however, is limited to allegations which are "consistent" with those made in the Amended Complaint. *Martinez*, 164 F. Supp. 3d at 508; *cf. Triestman*, 470 F.3d at 477 ("[W]e should not excuse frivolous or vexatious filings by *pro se* litigants, and [ ] *pro se* status does not exempt a party from compliance with relevant rules of procedural and substantive law.") (internal quotations and citations omitted).  This approach balances the solicitude with which the Court must treat *pro se* litigants with the well-established principle that "[a] complaint cannot be amended merely by raising new facts and theories in [a plaintiff's] opposition papers." *Guo v. IBM 401(k) Plus Plan*, 95 F. Supp. 3d 512, 526 (S.D.N.Y. 2015) (quoting *Southwick Clothing LLC v. GFT (USA) Corp.,* No. 99–CV–10452, 2004 WL 2914093, at *6 (S.D.N.Y. Dec. 15, 2004)).

## V.    DISCUSSION

The Court begins by addressing the arguments raised in the OCA's motion to dismiss.

### A.    Eleventh Amendment Immunity

The Eleventh Amendment to the United States Constitution provides as follows:

> The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State.

U.S. CONST. amend. XI.  "The Eleventh Amendment bars federal courts from entertaining suits brought by private parties against a state in its own name." *Peterson v. Tomaselli*, 469 F. Supp. 2d 146, 157 (S.D.N.Y. 2007); *Winokur v. Office of Court Admin.,* 190 F. Supp. 2d 444, 448 (E.D.N.Y. 2002)).

There are three well-recognized exceptions to this rule.  First, a state may waive its Eleventh Amendment immunity defense and consent to suit.  *Ahmed v. City Univ. of New York*, No. 15-CV-7375, 2017 WL 1216534, at *3 (E.D.N.Y. Mar. 27, 2017); *Coll. Sav. Bank v. Fla.*

*Prepaid Postsecondary Educ. Expense Bd.*, 527 U.S. 666, 670 (1999) ("[A] State may waive its sovereign immunity by consenting to suit.") (citing *Clark v. Barnard,* 108 U.S. 436, 447-448 (1883)).  Second, Congress can abrogate a state's sovereign immunity by acting pursuant to a grant of constitutional authority.  *Winokur*, 190 F. Supp. 2d at 448; *Kimel v. Fla. Bd. of Regents*, 528 U.S. 62, 80 (2000).  In addition to consent and congressional abrogation, "under the *Ex parte Young* doctrine, the Eleventh Amendment does not bar a suit against a state official when that suit seeks . . . prospective injunctive relief."[4]  *Winokur*, 190 F. Supp. 2d at 448 (internal quotations omitted); *see In re Dairy Mart Convenience Stores, Inc.*, 411 F.3d 367, 372 (2d Cir. 2005) ("[A]lthough [t]he people in their sovereign capacity may be immune from suit, it does not follow that [officers of the state] should share this aspect of sovereignty when they violate the laws of the people.") (internal quotation marks omitted).

The "Office of Court Administration is an agency of the Unified Court System" and for purposes of sovereign immunity is the functional equivalent of the State of New York.  *Canales-*

---

[4]   In *Ex parte Young*, the Supreme Court addressed the inherent tension between the promise of the Fourteenth Amendment and the Supremacy Clause on one hand, and the principles of sovereign immunity embodied in the Eleventh Amendment on the other.  *See Perez v. Ledesma,* 401 U.S. 82, 106 (1971) (Brennan, J., concurring in part and dissenting in part) ("*Ex parte Young* was the culmination of efforts by this Court to harmonize the principles of the Eleventh Amendment with the effective supremacy of rights and powers secured elsewhere in the Constitution.").  In *Young*, the Supreme Court created an exception to the general principle that sovereign immunity limits the grant of Article III judicial authority, allowing federal courts to entertain certain suits against state officials claiming ongoing violations of federal law, where the relief requested is limited to prospective relief rather than money damages.  "The theory of *Young* was that an unconstitutional statute is void, and therefore does not impart to [the state official] any immunity from responsibility to the supreme authority of the United States."  *Green v. Mansour*, 474 U.S. 64, 68 (1985).  The Supreme Court's "decisions repeatedly have emphasized that the *Young* doctrine rests on the need to promote the vindication of federal rights."  *Pennhurst State Sch. & Hosp.*, 465 U.S. at 105; *Green*, 474 U.S. at 68 ("[T]he availability of prospective relief of the sort awarded in *Ex parte Young* gives life to the Supremacy Clause.  Remedies designed to end a continuing violation of federal law are necessary to vindicate the federal interest in assuring the supremacy of that law.").

*Jacobs v. New York State Office of Court Admin.*, 640 F. Supp. 2d 482, 498 (S.D.N.Y. 2009). Accordingly, unless Plaintiff can point to one of the three exceptions discussed above – consent, congressional abrogation, or *Ex parte Young* – this Court lacks jurisdiction to entertain her claim against the OCA.  Unfortunately for Plaintiff, none of these exceptions apply to the circumstances here.  As to the first and third exceptions, New York has clearly not consented to suit, and *Ex parte Young* is inapplicable since no New York State official is being sued for prospective relief.  As to abrogation, the only claim the Court can identify that Plaintiff is attempting to raise against the OCA is one brought under the FCRA – and the FCRA does not abrogate New York's Eleventh Amendment immunity.  "Because Congress enacted the FCRA pursuant to its authority under the Commerce Clause, Congress is not empowered to abrogate a state's Eleventh Amendment immunity through the FCRA."  *O'Diah v. New York City*, No. 02 CIV. 274, 2002 WL 1941179, at *6 (S.D.N.Y. Aug. 21, 2002) (citing *Seminole Tribe of Florida v. Florida,* 517 U.S. 44, 59 (1996)); *see Hale v. Mann,* 219 F.3d 61, 67 (2d Cir.2000) ("After *Seminole Tribe* the only potential source for congressional abrogation is the Fourteenth Amendment.").

   Because the Eleventh Amendment to the United States Constitution deprives this Court of jurisdiction to entertain the only conceivable claim Plaintiff is attempting to raise against the OCA, the Court respectfully recommends to Judge Seybert that the OCA's motion to dismiss be GRANTED, and the Complaint be DISMISSED, with prejudice, as to the OCA.

B.      **Article III Standing**[5]

1.      *Legal Principles*

The Court next addresses another threshold issue which is fundamental to the proper

exercise of this Court's jurisdiction – standing.    Article III, Section 2 of the United States

Constitution limits the jurisdiction of federal courts to actual "Cases" and "Controversies."  U.S.

CONST. art. III, § 2.  As the Supreme Court has stated, "the core component of standing is an

essential and unchanging part of the case-or-controversy requirement of Article III."  *Lujan v.*

*Defs. of Wildlife*, 504 U.S. 555, 560 (1992) (citing *Allen v. Wright,* 468 U.S. 737, 751 (1984)).

Over the years, federal jurisprudence has

> established that the irreducible constitutional minimum of standing
> contains three elements. First, the plaintiff must have suffered an
> "injury in fact"—an invasion of a legally protected interest which is
> (a) concrete and particularized, and (b) actual or imminent, not
> conjectural or hypothetical.    Second, there must be a causal
> connection between the injury and the conduct complained of—the
> injury has to be fairly . . . trace[able] to the challenged action of the
> defendant, and not . . . th[e] result [of] the independent action of
> some third party not before the court.  Third, it must be "likely," as
> opposed to merely "speculative," that the injury will be redressed by
> a favorable decision.

*Lujan*, 504 U.S. at 560-61 (internal quotations and citations omitted).  Since these elements are

not mere pleading requirements but rather jurisdictional prerequisites, "each element must be

supported in the same way as any other matter on which the plaintiff bears the burden of proof,

*i.e.*, with the manner and degree of evidence required at the successive stages of the litigation."

*Id.* at 561.  Put simply, a plaintiff "must allege facts that affirmatively and plausibly suggest that

---

    [5]   The Court treats the arguments in Defendants' motions which address a lack of
standing as requesting dismissal of the Complaint pursuant to Federal Rule of Civil Procedure
12(b)(1).

it has standing to sue" in order to survive a motion to dismiss for lack of standing.  *Amidax Trading Group v. S.W.I.F.T. SCR*, 671 F.3d 140, 145 (2d Cir. 2011)).

In *Spokeo. Inc. v. Robins*, the Supreme Court addressed Article III standing in the context of the FCRA.  After discussing the general principles of standing and jurisdiction, the Court stated the following as to the consumer-plaintiff in that action:

> In the context of this particular case, these general principles tell us two things: On the one hand, Congress plainly sought to curb the dissemination of false information by adopting procedures designed to decrease that risk. On the other hand, [consumer-plaintiff] cannot satisfy the demands of Article III by alleging a bare procedural violation. A violation of one of the FCRA's procedural requirements may result in no harm. For example, even if a consumer reporting agency fails to provide the required notice to a user of the agency's consumer information, that information regardless may be entirely accurate. In addition, not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm

136 S. Ct. 1540, 1550, 194 L. Ed. 2d 635 (2016), *as revised* (May 24, 2016).  The Second Circuit has interpreted *Spokeo* to

> instruct that an alleged procedural violation can by itself manifest concrete injury where Congress conferred the procedural right to protect a plaintiff's concrete interests and where the procedural violation presents a "risk of real harm" to that concrete interest. But even where Congress has accorded procedural rights to protect a concrete interest, a plaintiff may fail to demonstrate concrete injury where violation of the procedure at issue presents no material risk of harm to that underlying interest.

*Strubel v. Comenity Bank*, 842 F.3d 181, 190 (2d Cir. 2016) (citations omitted); *see Frydman v. Experian Info. Sols., Inc.*, No. 14 CIV. 9013, 2017 WL 9538165, at *8 (S.D.N.Y. Aug. 30, 2017), *report and recommendation adopted*, No. 14 CIV. 9013, 2017 WL 4221086 (S.D.N.Y. Sept. 21, 2017), *aff'd*, No. 17-3365, 2018 WL 6179017 (2d Cir. 2018).

16

## 2.    *Application to Plaintiff's Complaint*

Applying general principles of standing and recent judicial guidance to the allegations in the instant action, the Court finds that Plaintiff has failed to allege a plausible injury-in-fact sufficient to establish standing as to any claim she attempts to assert under the FCRA.  To briefly review, Plaintiff's Complaint alleges the following facts with respect to the FCRA.  As to her 2016 background check for employment with Target, Plaintiff states:  "even my current address was incorrectly recorded."  Compl. at 10.  With respect to her 2014 background check for employment with HomeGoods, she states:  "[t]he reports are rife with inaccuracies, even my previous address (943 Wallace Avenue, Baldwin , NY 11510) was not recorded."  *Id*.  Although it is not clear to which background check she is referring, Plaintiff also alleges as follows:  "I requested copies of my background check.  Supposedly these were mailed to me, but since First Advantage did not have my correct address[,] I never received them. Therefore, material with my date of birth and Social Security Number, is somewhere out there, no one knows where!!!"  *Id*.

The allegations in Plaintiff's opposition memorandum which are not inconsistent with her Complaint can be distilled to the following:[6]  there existed "inaccurate information" in her first background check in 2014 consisting of "'aliases' and 'addresses['] that do not belong to Plaintiff, but rather data which is actually created and maintained in local law enforcement 'Online Booking Systems' (OLBS) when individuals are arrested."  Pl.'s Opp'n. at 6.  Her second background check, created in 2016 for employment with Target, "omitted" the address Plaintiff provided to Target in her employment application, "inaccurately entered and recorded a different address for Plaintiff," and "deliberately 'excluded' from the background report a

---

[6]  The Court generously reads these allegations to be "consistent" with those in her Complaint even when they contain additional information that Plaintiff did not specifically state in her Complaint to the extent there is no direct conflict between the two.

previous address" which Plaintiff claims is "well known."  *Id*.  Lastly, Plaintiff claims the Defendants "created and published to a 'third-party' a Report that consisted of false and inaccurate information and 'omitted' some information in Plaintiff's Background report."  *Id*.

These allegations do not plead an injury-in-fact sufficient to establish Plaintiff's standing as to any FCRA claims.  Apart from the generalized manner in which she pleads – which is discussed in greater detail below – a striking and common characteristic of Plaintiff's allegations is the complete absence of any alleged harm.  The closest Plaintiff comes to pleading an injury-in-fact is the allegation that her confidential information has been improperly disseminated. However, even this allegation does not go so far as to claim she has suffered any actual harm as a result.  The Court is unable to plausibly infer from any of Plaintiff's allegations the "invasion of a legally protected interest which is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical."  *Lujan*, 504 U.S. at 560 (internal citations omitted).  Indeed, given the fact that Plaintiff asserts "a bare procedural violation [of the FCRA], divorced from any concrete harm," *Spokeo*, 136 S. Ct. at 1549, her allegations appear to be the very definition of "conjectural [and] hypothetical."  *Lujan*, 504 U.S. at 560.

In addition, rather than simply failing to allege a concrete and particularized, actual and imminent harm, Plaintiff's allegations seemingly preclude such an inference with respect to her employment – she *was* hired by both HomeGoods and Target, and she does not point to any adverse action taken by either company which is in any way connected to alleged inaccurate information in her background checks.  *See* Compl. at 10.

Because this Court finds that Plaintiff has failed to plausibly allege an injury-in-fact in connection with alleged violations of the FCRA, Plaintiff has failed to establish standing to bring

such claims.  This Court therefore lacks jurisdiction to entertain Plaintiff's FCRA claims.  The Court respectfully recommends to Judge Seybert that these claims be DISMISSED accordingly.

### C.      Failure to State a Claim

#### 1.      FCRA

Even if Plaintiff had sufficiently pleaded an injury-in-fact so as to establish standing under the FCRA, her allegations fail to state any claim under the FCRA.  In the Court's view, the only conceivable claims Plaintiff could be attempting to raise under the FCRA are (1) a claim under 15 U.S.C. § 1681e(b) for failure to follow reasonable procedures to assure accuracy, *see* Pl.'s Opp'n. at 6 (reciting statutory language), and (2) a claim that the consent and disclosure forms authorizing her background checks were deficient under 15 U.S.C. § 1681b(b)(2)(A). Neither claim is viable for the reasons which follow.

#### a.      15 U.S.C. § 1681e(b)

##### i.      Target & HomeGoods

15 U.S.C. § 1681e(b) provides that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates."  The FCRA defines "consumer reporting agency" as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties."  15 U.S.C. § 1681a(f).

Defendants Target and HomeGoods are not credit reporting agencies within the definition of the FCRA; rather, they are retail commercial companies whose primary purpose is the sale of consumer goods.  *Cf. Wojtczak v. Safeco Prop. & Cas. Ins. Companies*, 669 F. Supp. 2d 305, 312

(W.D.N.Y. 2009) (finding neither insurance company defendant nor individual defendants fit within the definition of "consumer reporting agency"); *Marshall v. U.S. Postal Inspection Serv.*, No. 3:08-CV-1889, 2016 WL 10571889, at *9 (D. Conn. Nov. 7, 2016) ("[An Assistant U.S. Attorney] is not a credit reporting agency, and [Plaintiff] has not alleged that [that AUSA] works in the credit reporting business.").

Because neither Defendant HomeGoods nor Target is a consumer reporting agency within the meaning of the FCRA, Plaintiff cannot maintain any claim against them for alleged inaccurate information contained in her background checks under 15 U.S.C. § 1681e(b).  The Court therefore respectfully recommends to Judge Seybert that these § 1681e claims against these Defendants be DISMISSED, with prejudice.

### ii.      First Advantage

As to First Advantage, which is properly considered a credit reporting agency, for Plaintiff to raise a viable claim under 15 U.S.C. § 1681e(b), she must allege "(1) the consumer reporting agency was negligent [or willful] in that it failed to follow reasonable procedures to assure the accuracy of its credit report; (2) the consumer reporting agency reported inaccurate information about the plaintiff; (3) the plaintiff was injured; and (4) the consumer reporting agency's negligence proximately caused the plaintiff's injury." *Nguyen v. Ridgewood Sav. Bank*, No. 14-CV-1058, 2015 WL 2354308, at *10 (E.D.N.Y. May 15, 2015) (quoting *Gorman v. Experian Info. Solutions, Inc.,* No. 07–CV–1846, 2008 WL 4934047, at *4 (S.D.N.Y. Nov. 19, 2008)).

The only one of these elements which has potentially been pleaded by the Plaintiff is that First Advantage reported inaccurate information about her.  However, even this assumption requires the most generous of readings – both Plaintiff's Complaint and her opposition

20

memorandum state that *the OCA* was responsible for providing inaccurate information. *See* Compl. at 10; Pl.'s. Opp'n. at 6. Plaintiff's pleadings contain no allegations from which plausible inferences satisfying the other three elements could be drawn. As the Court has already discussed in the context of standing, Plaintiff has not pleaded any injury. With regard to First Advantage's alleged negligent or willful failure to follow reasonable procedures, Plaintiff states nothing at all about First Advantage's procedures. *See Nguyen*, 2015 WL 2354308, at *11 (granting defendants' motion to dismiss where plaintiff failed "to make any allegations relating to the procedures Trans Union, Equifax or Experian instituted to ensure the accuracy of the information in [plaintiff's] credit reports, to support a Section 1681e(b) claim"); *Gaft v. Mitsubishi Motor Credit of Am.*, No. 07-CV-527, 2009 WL 3148764, at *9 (E.D.N.Y. Sept. 29, 2009) (dismissing FCRA claim, noting that the plaintiff's amended complaint was "devoid of any allegations concerning the reasonableness of the procedures used by the defendant consumer reporting agencies"). And as to causation, Plaintiff has not pleaded any linkage, nor can she in the absence of any allegations of negligence or injury.

In addition to the Plaintiff's pleadings failing to state a claim under 15 U.S.C. § 1681e(b), Plaintiff has also failed to identify any information for which a misrepresentation would be actionable under that section. In *Williams-Steele v. Trans Union*, the Southern District of New York held that "allegedly incorrect information on Plaintiff's credit report, including: (1) her telephone number, (2) an alternate address, (3) an additional employer, and (4) her Social Security number" was not actionable under the FCRA. No. 12 CIV. 0310, 2015 WL 576714, at *2 (S.D.N.Y. Feb. 10, 2015), *aff'd sub nom. Williams-Steele v. TransUnion*, 642 Fed. App'x 72 (2d Cir. 2016). Because this information does not bear on any of the characteristics described in 15 U.S.C. § 1681a(d)(1) – *i.e.*, a consumer's credit worthiness, credit standing, credit capacity,

21

character, general reputation, personal characteristics, or mode of living, which may be used to determine the consumer's eligibility for credit, insurance, or employment – the court held that alleged inaccuracies concerning this information were not within the scope of the FCRA. *Id.*

Consistent with this logic, the Court finds that the allegedly inaccurate information Plaintiff complains of, namely, incorrect or omitted addresses and vague references to "aliases," is not the type of information contemplated by 15 U.S.C. § 1681e(b), since "it is not information that bears on any of the characteristics described in 15 U.S.C. § 1681a(d)(1)." *Williams-Steele*, 2015 WL 576714, at \*2. This conclusion is in line with the finding of the Supreme Court in *Spokeo* that, in the context of standing, "not all inaccuracies cause harm or present any material risk of harm. An example that comes readily to mind is an incorrect zip code. It is difficult to imagine how the dissemination of an incorrect zip code, without more, could work any concrete harm." *Spokeo*, 136 S. Ct. at 1550.

For the myriad reasons discussed above, the Court respectfully recommends to Judge Seybert that any claim construed as Plaintiff's attempt to assert coverage under 15 U.S.C. § 1681e(b) be DISMISSED as to HomeGoods, Target, and First Advantage.

### b.    15 U.S.C. § 1681b(b)(2)(A)

There is no readily ascertainable indication that Plaintiff is asserting a claim under 15 U.S.C. § 1681b(b)(2)(A) of the FCRA. Nonetheless, the Court addresses this statutory provision briefly given Plaintiff's *pro se* status in the unlikely event that she intended to assert such a claim. Pursuant to 15 U.S.C. § 1681b(b)(2)(A), with limited exceptions,

> a person may not procure a consumer report, or cause a consumer report to be procured, for employment purposes with respect to any consumer, unless—
>
> (i) a clear and conspicuous disclosure has been made in writing to the consumer at any time before the report is

22

procured or caused to be procured, in a document that consists solely of the disclosure, that a consumer report may be obtained for employment purposes; and

(ii) the consumer has authorized in writing (which authorization may be made on the document referred to in clause (i)) the procurement of the report by that person.

Plaintiff has attached to the Complaint the consent and disclosure form issued to her prior to her 2014 background check for employment with HomeGoods, *see* Compl. at 57, and the consent and disclosure form issued to her prior to her 2016 background check for employment with Target. *See id*. at 52. The Court finds as a matter of law that both forms constitute "clear and conspicuous" disclosures pursuant to 15 U.S.C. § 1681b(b)(2)(A)(i), and both are signed by Plaintiff pursuant to 15 U.S.C. § 1681b(b)(2)(A)(ii). To the extent that Plaintiff is attempting to assert a claim that either of the disclosures is statutorily deficient, such claim must fail. Both disclosures are facially valid. Accordingly, the Court respectfully recommends to Judge Seybert, to the extent Plaintiff is asserting a claim against Target or HomeGoods under 15 U.S.C. § 1681b(b)(2)(A), that these claims be DISMISSED, with prejudice.

### 2.    *Hostile Work Environment / Retaliation*

In addition to claims under the FCRA, Plaintiff purports to plead a claim for hostile work environment and for retaliation. The Court assumes that Plaintiff asserts her hostile work environment and retaliation claims only against Target. *See* Compl. at 10 ("I am working at Target, but have been subjected to a hostile work environment. All incidents had been documented and reported to Target's Integrity hotline (9/11/1017, ref. TGT-17-09-0313 9/14/17 Access Key # 835514555201, 11/06/17 Access Key # 565390288501, and 12/11/17, Access Key # 5118980313017.) All of these documented complaints involve Target's Team members and team leaders, even Target's executive team leaders."). While difficult to discern, Plaintiff's

claim appears to be that Target employees took adverse employment action against her for her participation in a class action lawsuit. *See id*. ("I believe strongly that these incidents are a result on my inquiries regarding my rights in the class action law suit.").  Plaintiff does not state a statutory, constitutional, or other right of action for her hostile work environment and retaliation claims.  Given Plaintiff's *pro se* status, the Court has considered all potential bases upon which Plaintiff might bring her claims.  The Court is, however, unable to identify any statutory, constitutional, or other right of action capable of supporting Plaintiff's claims, as noted below.

Plaintiff's grievances are against her private employer and co-workers.  To the extent Plaintiff is trying to raise a claim under Title VII, that effort is futile because there is no averment that she has attempted to exhaust her administrative remedies by filing a charge with the EEOC – a condition precedent to suit.  Under Title VII, "a claimant may bring suit in federal court only if she has filed a timely complaint with the EEOC and obtained a right-to-sue letter." *Legnani v. Alitalia Linee Aeree Italiane, S.P.A*, 274 F.3d 683, 686 (2d Cir. 2001) (citing 42 U.S.C. § 2000e–5(e) and (f); 29 U.S.C. § 626(d)).  In the absence of a timely EEOC charge, any judicial remedy under Title VII of the Civil Rights Act is foreclosed to Plaintiff.  Further, in the absence of any viable federal claim, Plaintiff would also be unable to assert a cause of action for hostile work environment or retaliation under the New York State Human Rights Law.

Because Plaintiff points to no statutory or other right of action to sustain a claim of hostile work environment or retaliation, and because the Court can find no right of action upon which Plaintiff may assert her claims, the Court respectfully recommends to Judge Seybert that these claims be DISMISSED.

### D.    Leave to Re-Plead

"When addressing a *pro se* complaint, a district court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Aquino v. Prudential Life & Cas. Ins. Co.*, 419 F. Supp. 2d 259, 278 (E.D.N.Y. 2005) (citing *Thompson v. Carter*, 284 F.3d 411, 419 (2d Cir. 2002) ("The liberal pleading standards applicable to *pro se* civil rights complaints in this circuit require that the district court give [plaintiff] an opportunity to flesh out his somewhat skeletal complaints before dismissing them")).   The Second Circuit has stated that "[w]hen a motion to dismiss is granted, the usual practice is to grant leave to amend the complaint." *Hayden v. Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999) (citing *Ronzani v. Sanofi S.A.*, 899 F.2d 195, 198 (2d Cir. 1990)), *overruled on other grounds by Gonzaga v. Doe*, 536 U.S. 273 (2002); *see* Fed. R. Civ. P. 15(a)(2) ("The court should freely give leave [to amend] when justice so requires.").   The Court should generally not dismiss a *pro se* complaint without granting the plaintiff leave to amend if a valid claim could be stated. *Clifton v. Hra Nyc Govt*, No. 16-1753, 2016 WL 4203486, at *1 (E.D.N.Y. Aug. 9, 2016) (citing *Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000)).

Even under this liberal standard, however, the court may decline to provide the plaintiff with an opportunity to re-plead if the court finds that the plaintiff "cannot correct the defects in his federal claims" and therefore "any attempt to amend the pleading . . . would be futile." *Shorter v. Rice*, No. 12-0111, 2012 WL 1340088, at *5 (E.D.N.Y. Apr. 10, 2012); *see Cuoco*, 222 F.3d at 112 (citing *Hunt v. Alliance N. Am. Gov't Income Trust*, 159 F.3d 723, 728 (2d Cir. 1998)) ("The problem with [the plaintiff's] causes of action is substantive; better pleading will not cure it.  Repleading would thus be futile. Such a futile request to replead should be denied.").

Here, the only claims which may lend themselves to re-pleading are (1) Plaintiff's claim against First Advantage pursuant to 15 U.S.C. § 1681e(b), and (2) her claims for hostile work

environment and retaliation against Target to the extent she can plead that she has exhausted her administrative remedies.  The remainder of Plaintiff's claims are futile for the reasons discussed above.  Specifically, (1) any claim against the OCA under the FCRA is barred by the Eleventh Amendment; (2) no claim can lie against Target or HomeGoods under 15 U.S.C. § 1681e(b) because neither is a "consumer reporting agency" under the FCRA; and (3) any claim pursuant to 15 U.S.C. § 1681b(b)(2)(A) fails as a matter of law since the consent and disclosure forms provided by HomeGoods and Target, respectively, and signed by Plaintiff, facially satisfy that subsection of the FCRA.

## VI.   CONCLUSION

For the foregoing reasons, the Court respectfully recommends to Judge Seybert that Defendants' motions to dismiss be GRANTED, and Plaintiff's Complaint be DISMISSED.  The Court recommends that all claims against the OCA and HomeGoods be dismissed with prejudice.  To the extent Judge Seybert may authorize Plaintiff to amend her Complaint, this Court recommends that Plaintiff be granted leave to re-plead only (1) a claim pursuant to 15 U.S.C. § 1681e(b) against First Advantage, and (2) claims for hostile work environment and retaliation against Target to the extent she can plead that she has exhausted her administrative remedies.

## VII.   OBJECTIONS

Pursuant to 28 U.S.C. § 636(b)(1)(c) and Rule 72 of the Federal Rules of Civil Procedure, the parties shall have fourteen (14) days from service of this Report and Recommendation to file written objections.  *See* FED. R. CIV. P. 6(a), (e).  Such objections by an attorney of record shall be filed with the Clerk of the Court via ECF.  **A courtesy copy of any objections filed is to be sent to the Chambers of the Honorable Joanna Seybert, and to the Chambers of the**

**undersigned.  Any requests for an extension of time for filing objections must be directed to Judge Seybert prior to the expiration of the fourteen (14) day period for filing objections**.

Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140, 155 (1985); *Beverly v. Walker*, 118 F.3d 900, 901 (2d Cir. 1997), *cert. denied*, 522 U.S. 883 (1997); *Savoie v. Merchants Bank*, 84 F.3d 52, 60 (2d Cir. 1996).

**Counsel for Defendant Target Corporation is directed to serve a copy of this Report and Recommendation forthwith upon the *pro se* Plaintiff by overnight and first-class mail and to file proof of service on ECF by February 15, 2019.**

**SO ORDERED.**

Dated: Central Islip, New York
            February 12, 2019

/s/ A. Kathleen Tomlinson
A. KATHLEEN TOMLINSON
U.S. Magistrate Judge